IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


STEVEN E. CLECKLER,
      Petitioner,

vs.                                 Case No. 3:07cv283/MCR/EMT

WALTER A. McNEIL,[1]
      Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer to the petition and relevant portions of the state court record (Doc. 13).  Petitioner filed a reply (Doc. 18).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 13, Exhibits).  Petitioner was charged in the Circuit Court for Escambia County, Florida, with second degree murder with a weapon involving the death of James Gentry on March 27, 2001 (Doc. 13, Ex. A at 1).  Following a jury trial, Petitioner was convicted

_____

[1]Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

as charged (Doc. 1 at 1; Doc. 13, Ex. A at 17, Ex. B).  On September 11, 2003, Petitioner was sentenced to thirty (30) years of imprisonment with pre-sentence jail credit of 469 days (Doc. 1 at 1; Doc. 13 at 29).

Petitioner appealed the judgment to the Florida First District Court of Appeals ("First DCA").  On October 28, 2004, the First DCA affirmed the judgment of conviction per curiam without written opinion, with the mandate issuing November 23, 2004 (Doc. 13, Exs. E, F). Cleckler v. State, 886 So. 2d 229 (Fla. 1st DCA Oct. 28, 2004) (Table).  Petitioner did not seek certiorari review by the Florida Supreme Court or the United States Supreme Court.

On November 18, 2004, Petitioner filed a motion for mitigation of his sentence pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Doc. 13, Ex. G).  The trial court denied the motion in an order rendered on December 17, 2004 (id., Ex. H).

On July 5, 2005, Petitioner filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 13, Ex. I at 3–11).  The trial court summarily denied the motion in a written opinion rendered on March 30, 2006 (id. at 38–46).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on May 2, 2007, with the mandate issuing May 30, 2007 (Doc. 13, Exs. J, K).  Cleckler v. State, 955 So. 2d 568 (Fla. 1st DCA May 2, 2007).

Petitioner filed the instant habeas action on June 29, 2007 (Doc. 1 at 6).  Respondent concedes that the petition is timely (Doc. 13 at 3).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

>    (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the

---

[2]Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or

unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion."  Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  See Panetti v. Quarterman, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

<u>Ground one:  Failing to file a motion to suppress Defendant's confession.</u>

Petitioner claims that his trial counsel performed deficiently by failing to seek suppression of Petitioner's confession to Investigator Donald Nesmith (Doc. 1 at 4–4A).  Petitioner states he was under the influence of alcohol, suffered from lack of sleep, and was homeless at the time of the confession, and this combination deteriorated his mental state to the point that Petitioner's waiver of his <u>Miranda</u> rights was not knowing or intelligent (*id.*).  Petitioner additionally states that defense counsel should have objected to admission of the tape recorded confession and submission of the written transcript of the tape recording to the jury during deliberations because it was inaccurate. Petitioner states defense counsel told the court that portions of the tape recording were difficult to decipher, therefore, Petitioner contends, the transcript should not have been provided to the jury (*id.*).  Respondent concedes that Petitioner exhausted Ground One in the state courts (*see* Doc. 13 at 5, 7).

1.      Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.  Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied.  <u>Turner v. Crosby</u>, 339 F.3d 1247, 1279 (11th Cir. 2003); <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly

deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

Moreover, "[c]ounsel will not be deemed unconstitutionally deficient because of tactical decisions." McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir. 1984) (citations omitted); Crawford v. Head, 311 F.3d 1288, 1312 (11th Cir. 2002) ("Deliberate choices of trial strategy and tactics are within the province of trial counsel after consultation with his client. In this regard, this court will not substitute its judgment for that of trial counsel.") (quotation marks, internal alteration, and citation omitted). There is a strong presumption that counsel's performance was reasonable and adequate, with great deference being shown to choices dictated by reasonable strategy. Rogers, 13 F.3d at 386; *see also* Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004). "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference. Chandler, 218 F.3d at 1314 n.14 (citing Waters v. Thomas, 46 F.3d 1506, 1512, 1518-19 (11th Cir. 1995) (en banc)). "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground

to prove ineffectiveness of counsel." Waters, 46 F.3d at 1514. "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[3]

        2.      Federal Review of State Court Decision

Petitioner raised this claim, that is, both sub-claims, in his Rule 3.850 motion (Doc. 13, Ex. I at 7–8). In the state court's written opinion denying the motion, the state court correctly identified the Strickland standard as the controlling legal standard for evaluating claims of ineffective assistance of counsel (*id.* at 39–40). Because the state court applied the correct Supreme Court precedent, and the facts of Strickland and Petitioner's case are not materially indistinguishable, Petitioner is not entitled to federal relief on any of his ineffective assistance of counsel claims unless he demonstrates that the state court decision was based upon an unreasonable determination of the facts or was an unreasonable application of Strickland.

The court will first address Petitioner's claim that defense counsel should have sought suppression of Petitioner's statement to law enforcement on the ground that Petitioner's intoxication, lack of sleep, and homelessness deteriorated his mental state to the point that his waiver of his Miranda rights was not knowing or intelligent. The state court found as fact that Investigator Nesmith testified at trial that Petitioner did not appear to be under the influence of alcohol during his interrogation, nor did Petitioner smell of alcohol, although he did emanate a strong body odor (Doc. 13, Ex. I at 41). The court further found that there was no evidence in the record suggesting that Petitioner was intoxicated or otherwise unable to willfully waive his rights at the time he gave his statement to Investigator Nesmith (*id.* at 41). The court thus determined that defense counsel had no basis under state law for seeking suppression of the confession (*id.*).

According to Florida law at the time of Petitioner's trial, confessions given while under the influence of intoxicants should be suppressed when "the confessor is intoxicated to the degree of mania or is unable to understand the meaning of his statements." DeConingh v. State, 433 So. 2d

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

501 (Fla. 1983) (citing Lindsey v. State, 63 So. 832  (Fla. 1913)).  In the instant case, Petitioner's assertion that he was "under the influence of excessive alcohol consumption" and lack of sleep at the time of his interrogation, falls far short of the legal standard for suppressing the confession, that is, intoxication to the degree of mania or inability to understand the meaning of his statements. Furthermore, the record shows that defense counsel reviewed both the tape recording of the confession and the written transcript, and Petitioner does not allege that either of these sources suggested that he was intoxicated to the degree required to support a motion to suppress.  Therefore, Petitioner has failed to demonstrate that counsel's failure to seek suppression of the confession was unreasonable, or that there is a reasonable probability that the confession would have been suppressed if counsel had sought suppression.

With regard to the claim that defense counsel should have objected to admission of the confession and submission of the transcript to the jury on the ground that it contained "discrepancies," the state court found as fact that prior to the beginning of trial, defense counsel stated there was "one very minor problem with the transcript [of the recording of the confession] as it has to do with two people talking at once"; however, defense counsel admitted that the "minor difference I'm talking about isn't going to make any difference" (*see id.* at 41).  The state court further found that the tape recording was not so difficult to understand that it would have been excluded from evidence; therefore, an objection by defense counsel would have been fruitless (*id.*). Additionally, the state court found as fact that defense counsel strategically chose to use the admission of the tape recording to his advantage because a major theme of the defense was that if the jury closely inspected Petitioner's statement to law enforcement, they would determine that he did not commit the offense (*id.* at 41–42).  Based upon these findings, the state court concluded that Petitioner failed to show that defense counsel's performance was deficient.

Petitioner has failed to present clear and convincing evidence to rebut the state court's factual findings; therefore, those findings are presumed correct.  The trial transcript shows that just prior to the beginning of Petitioner's trial, counsel and the trial judge discussed whether the court reporter should transcribe the tape recording of Petitioner's statement to law enforcement while the recording was played during trial (Doc. 13, Ex. B at 8–10).  Defense counsel stated his position that the court reporter's transcription was unnecessary for two reasons.  First, there was already a transcript, and

the only discrepancy between the recording and the transcript was one moment where Investigator Nesmith and Petitioner were talking at the same time, and there was something on the recording that was not in the written transcript, but it was only a minor difference, and one that the court reporter would not be able to discern (*id.* at 9).  Second, the jury would not be able to use the court reporter's transcript for deliberations, so there was no reason to transcribe the recording (*id.*).  Petitioner does not allege that the inaccuracy in the transcript was anything other than the minor difference described by defense counsel.  Furthermore, Petitioner has failed to show that the minor discrepancy was of such significance that an objection from defense counsel would have been sustained. Therefore, Petitioner has failed to demonstrate that counsel's failure to object to the admission of the tape recorded confession and submission of the transcript to the jury constituted deficient performance.

Because Petitioner has failed to demonstrate that the state court's denial of either of his sub-claims was based upon an unreasonable determination of the facts or constituted an unreasonable application of <u>Strickland</u>, Petitioner is not entitled to relief on Ground One.

B.    <u>Ground two:  Failing to investigate the defenses of voluntary intoxication and insanity by intoxication.</u>

In Petitioner's reply to Respondent's answer, he states he wishes to "withdraw" this claim, and he requests that the court "dismiss [it] without prejudice" (Doc. 18 at 4).  As discussed *infra*, Petitioner's claim is without merit; therefore, denial of the claim is warranted.

Petitioner claims that his trial counsel provided ineffective assistance by failing to investigate a defense of voluntary intoxication (Doc. 1 at 4–4B).  Petitioner states defense counsel knew that he (Petitioner) was an alcoholic, that Petitioner was intoxicated during commission of the crime, and that Petitioner told Investigator Nesmith that he had "black-out spells" when he drank too much (*id.*).

1.    Clearly Established Supreme Court Law

The clearly established standard for evaluating claims of ineffective assistance of counsel is set forth *supra*.

2.    Federal Review of State Court Decision

With regard to a voluntary intoxication defense, the state court determined that voluntary intoxication was not available as a defense at the time Petitioner committed the murder (*see* Doc. 13, Ex. I at 43).  Indeed, effective October 1, 1999, Florida law provides,

> Voluntary intoxication resulting from the consumption, injection, or other use of alcohol or other controlled substance as described in chapter 893 is not a defense to any offense proscribed by law.  Evidence of a defendant's voluntary intoxication is not admissible to show that the defendant lacked the specific intent to commit an offense and is not admissible to show that the defendant was insane at the time of the offense, except when the consumption, injection, or use of a controlled substance under chapter 893 was pursuant to a lawful prescription issued to the defendant by a practitioner as defined in s. 893.02.

Fla. Stat. § 775.051 (1999).  Defense counsel's failure to assert a legally non-existent defense of voluntary intoxication was not unreasonable.  Furthermore, Petitioner cannot show he was prejudiced by counsel's failure to assert this defense as there is no possibility, let alone a reasonable probability, that the result of trial would have been different if counsel had attempted to assert it.

With regard to a defense of insanity by intoxication, the state court determined that Florida law recognized a defense of insanity "super-induced by the long and continued use of intoxicants so as to produce a fixed and settled frenzy or insanity either permanent or intermittent" (Doc. 13, Ex. I at 42 (citing Gray v. State, 731 So. 2d 816, 818, n.1 (Fla. 5th DCA 1999))).  However, the state court also determined there was no evidence to support such a defense in Petitioner's case.  At trial, Petitioner's counsel presented expert testimony of Dr. James Larson, a psychologist, to show that Petitioner's confession was most likely false due to his homeless status, mental problems, intelligence level, and alcohol dependence, and although Dr. Larson testified that Petitioner was alcohol dependent, there was no evidence that Petitioner was insane at the time of the offense (*see* Doc. 13, Ex. B at 95–115).  Furthermore, the state court noted that in Petitioner's Rule 3.850 motion, he did not offer any specific facts supporting an insanity by intoxication defense (Doc. 13, Ex. I at 42).

Initially, in light of Florida Statutes section 775.051, it is questionable whether defense counsel could have presented any evidence that Petitioner was insane at the time of the killing by virtue of his voluntary alcohol consumption.  However, assuming that counsel could have presented such evidence, the facts asserted by Petitioner, that he was an alcoholic, was intoxicated during

commission of the crime, and told Investigator Nesmith that he had "black-out spells" when he drank too much, fall far short of suggesting that Petitioner's alcohol consumption caused him to be in a state of frenzy or insanity at the time he killed the victim.  Furthermore, as the state court noted, Petitioner's entire defense at trial was that he did not commit the crime, that his confession was false, and there was no other evidence, besides the false confession, that Petitioner committed the crime.  It would have been completely contradictory to this theory to argue that Petitioner did commit the crime but was insane at the time he did so.  Therefore, Petitioner failed to show that defense counsel performed deficiently by failing to assert a defense of insanity by intoxication.  Accordingly, Petitioner is not entitled to habeas relief on Ground Two.

     C.    <u>Ground three: Failing to object to questions asked by the State regarding the position of the flap of victim's shirt pocket.</u>

Petitioner claims that defense counsel provided ineffective assistance by failing to object to the prosecutor's questioning of Investigator Nesmith concerning the position of the flap of the victim's shirt pocket on the ground that the question "was argumentative and was not drawn to a conclusion for the benefit of the jury [sic]" and was meant to suggest that Petitioner killed the victim for his money and rifled through his pockets (Doc. 1 at 5–5A).  Petitioner contends he was prejudiced by counsel's failure to object because the issue was not preserved to appeal (*id.* at 5A).  Respondent concedes that Petitioner exhausted this claim in the state courts (*see* Doc. 13 at 5, 11).

     1.    Clearly Established Supreme Court Law

The clearly established standard for evaluating claims of ineffective assistance of counsel is set forth *supra*.

     2.    Federal Review of State Court Decision

The state court found as fact that the question to which Petitioner was referring was a question directed to Officer Sztukowski (Doc. 13, Ex. I at 43–44).  The prosecutor asked Officer Sztukowski whether the decedent's shirt pocket was "lifted up" or in an upper position, and the officer responded that the pocket was lifted up and that it appeared as if someone had recently gone through the pocket (*id.*).  The court denied Petitioner's claim on the ground that he failed to allege, and the court could not ascertain, any legal basis for objecting to the question (*id.*).

The fact that the prosecutor's question suggested a motive for Petitioner's killing the victim, that is, to recover money that the victim alleged stole from him, did not render the question legally objectionable.  In the absence of any legal basis for an objection by counsel, Petitioner has failed to satisfy either the deficient performance prong or the prejudice prong of the <u>Strickland</u> standard. Therefore, he is not entitled to habeas relief on this claim.

     D.     <u>Ground four:  Failing to move to strike the testimony of prosecution witness Hubert Law.</u>

              <u>Ground five:   Failing to impeach Hubert Law's testimony during cross-examination.</u>

In Ground Four, Petitioner claims that defense counsel performed ineffectively by failing to move to strike the testimony of Hubert Law on the ground that his testimony was not credible by virtue of the fact that he was then serving a prison sentence (Doc. 1 at 5–5A).  In Ground Five, Petitioner contends Mr. Law made several contradictory and inconsistent statements during his direct testimony, but counsel failed to impeach him with these statements during cross-examination (*id.* at 5B).   Petitioner further asserts counsel failed to impeach Mr. Law's testimony with Investigator Nesmith's trial testimony and deposition testimony regarding whether Mr. Law's testimony was motivated by hope of a reduced sentence (*id.*).   Respondent concedes that Petitioner exhausted these claims in the state courts (*see* Doc. 13 at 5, 12).

       1.      Clearly Established Supreme Court Law

The clearly established standard for evaluating claims of ineffective assistance of counsel is set forth *supra*.

       2.      Federal Review of State Court Decision

The state court found as fact that defense counsel brought to the jury's attention variations in Mr. Law's and Investigator Nesmith's testimony during cross-examination of both witnesses (Doc. 13, Ex. I at 44).  The state court further found that defense counsel questioned Mr. Law about his incarcerative sentence and whether he was testifying in hopes of receiving a sentence reduction (*id.* at 44–45).  Additionally, the court found that Petitioner failed to allege a legal basis for striking Mr. Law's testimony (*id.* at 44).  Therefore, Petitioner failed to show that defense counsel performed

deficiently in his cross-examination of Mr. Law or his failure to move to strike Mr. Law's testimony (*id.* at 44–45).

The state court's denial of these claims was not unreasonable.  The fact that Mr. Law was incarcerated at the time of his trial testimony did not render his testimony inadmissible, it simply provided a basis for defense counsel to impeach his credibility.  Defense counsel did so by eliciting testimony from Mr. Law that he was sentenced to fifteen years in prison, and by questioning Mr. Law about his motivation for testifying, specifically, whether he was doing so in hopes of receiving a reduced sentence (Doc. 13, Ex. B at 39–40).  Additionally, the trial transcript shows that defense counsel cross-examined Mr. Law and Investigator Nesmith on the issue of Mr. Law's motivation for testifying.  Defense counsel questioned Mr. Law as follows:

> Q.      You agreed to testify here today in hopes of getting your sentence reduced?
>
> A.      No, sir.
>
> Q.      Do you have any idea that Mr. Rimmer could take you back before a judge and ask the judge to reduce or modify your sentence?
>
> A.      No, sir.
>
> Q.      Didn't have that thought in mind when you stepped forward to testify?
>
> A.      No, sir, that was in a deposition to a detective, no, sir, it was not.
>
> Q.      Have you ever talked to the officers who interviewed you about just that situation, about getting your sentence modified?
>
> A.      Yes, sir.
>
> Q.      Now if you didn't have any interest in getting your sentence modified, why was it that you asked the officers about it?
>
> A.      I didn't ask the officer, they made it plain to me that since it was a voluntary statement they could not offer me nothing and they asked me would I proceed in agreement with that and I told them yes.
> . . . .
> Q.      They were the ones that brought it up, not you?

       A.       Yes, sir.

(Doc. 13, Ex. B at 39–40).

During cross-examination of Investigator Nesmith, defense counsel questioned him about Mr. Law's offering information to law enforcement about the murder:

       Q.     At some point you interviewed Mr. Hubert Law also in regards to this case, did you not?

       A.       Yes, sir.

       Q.     Did he ask you for help in return for his testimony?

       A.       No, sir.

       Q.     Did he ever suggest he would like to get any help for his testimony?

       A.       He may have suggested it but he was told right up front before any formal investigation was going on that I could not offer any help or do anything for him.

       Q.     Who brought that up?

       A.       I don't know if I did — I know that when we interviewed that is common, we have to tell them right up front that we don't, there's no way we can help.

(Doc. 13, Ex. B at 61).  Defense counsel then asked Investigator Nesmith to read his deposition testimony and asked him if it refreshed his recollection as to whether Mr. Law asked for help in conjunction with his testimony, and Investigator Nesmith responded that Law did mention it, and officers told him that they would not offer any (*id.* at 62).  Defense counsel asked who brought up the fact that Mr. Law would like help in exchange for his testimony, and Mr. Nesmith responded that Mr. Law brought up the subject, and that it was one of the first things he brought up when he arrived for his interview (*id.* at 62–63).

The record shows that defense counsel conducted a reasonable cross-examination of Mr. Law and Investigator Nesmith regarding the fact that Mr. Law was incarcerated at the time he offered his testimony to police and testified at Petitioner's trial and regarding Mr. Law's motivation for testifying against Petitioner.  Petitioner has failed to identify other facts or issues that counsel should

have explored on cross-examination, and he has failed to suggest a legal basis for counsel's seeking to strike or completely exclude Mr. Law's testimony.  Therefore, he has failed to demonstrate that the state court's denial of these ineffective assistance of counsel claims was unreasonable.

    E.    <u>Ground six:  Failing to argue that the State had failed to produce a weapon</u>.

        <u>Ground seven:  Failing to argue the "non-existence" of any physical evidence</u>.

In Ground Six, Petitioner claims that defense counsel was ineffective for failing to argue to the jury in his closing argument that the State failed to produce the murder weapon or any physical evidence that the tree limb shown next to the victim in a photograph was the murder weapon (Doc. 1 at 5C).  In Ground Seven, Petitioner contends defense counsel failed to argue the "non-existence" of any physical evidence to the jury by virtue of the State's presentation of only a photograph of the tree limb, instead of the tree limb itself (Doc. 1 at 5D).  Respondent concedes that Petitioner exhausted these claims by raising them in his Rule 3.850 motion (*see* Doc. 13 at 5, 13).[4]

[4]In Petitioner's reply to Respondent's answer, he appears to recharacterize his claims as ineffective assistance of counsel based upon counsel's failure to seek pre-trial dismissal of the charge for lack of evidence (Doc. 18 at 5).  He also includes claims that counsel was ineffective for failing to request laboratory testing on the tree limb, and counsel was ineffective for failing to file a motion for a "<u>Brady</u> hearing" (*id.*).  These additional claims, asserted for the first time in Petitioner's reply, were not properly raised in his habeas petition.  Petitioner could not amend his petition "as a matter of course" by including these claims in his reply because Respondent had already served its answer.  *See* Fed. R . Civ. P. 15(a) (a party is permitted to amend a pleading once "as a matter of course" at any time before a responsive pleading is served or, otherwise, only by leave of court or by written consent of the adverse party); Rule 11 of the Rules Governing Section 2254 Proceedings (district court may apply the Federal Rules of Civil Procedure consistent with the Rules Governing Section 2254 Proceedings).  Furthermore, Petitioner did not seek leave of court to amend his petition, and the undersigned does not construe Petitioner's reply as such a request because Petitioner expressly stated his intent that the document be deemed a reply to Respondent's answer, and nowhere in the document does Petitioner mention a desire or intent to amend his petition or add new claims (*see* Doc. 18).

Additionally, the new claims are procedurally barred.  Upon careful review of the state court record, the undersigned finds no evidence that Petitioner raised the additional three claims of ineffective assistance of counsel, that is, counsel's failure to file a pre-trial motion to dismiss based upon insufficiency of the evidence, counsel's failure to obtain laboratory testing of the tree limb, and counsel's failure to file a motion for a "<u>Brady</u> hearing," in his Rule 3.850 motion; therefore, the claims were not exhausted in the state courts, as required by 28 U.S.C. § 2254(b).  Although Respondent conceded that the ineffective assistance of counsel claims asserted in Grounds Six and Seven of the petition were exhausted (*see* Doc. 13 at 5), this apparent waiver of the exhaustion defense does not apply to Petitioner's additional ineffective assistance of counsel claims asserted for the first time in his reply.  Furthermore, Petitioner is barred by state procedural rules from exhausting the substance of his additional ineffective assistance of counsel claims because such claims are properly raised in a Rule 3.850 motion.  <u>Robinson v. State</u>, 637 So. 2d 998 (Fla. 1st DCA 1994) (citation omitted).  As previously noted, Petitioner did not raise the additional ineffective assistance of counsel claims in his Rule 3.850 motion, and state procedural rules bar the presentation of his claims in a second Rule 3.850 motion, *see* Fla. R. Crim. P. 3.850(f), therefore, the claims are procedurally barred from presentation to the state courts, and procedural default exists for purposes of federal habeas review.  *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 735, n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); <u>Chambers v. Thompson</u>, 150 F.3d 1324,  1327 (if a petitioner failed to raise an

1.      Clearly Established Supreme Court Law

The clearly established standard for evaluating claims of ineffective assistance of counsel is set forth *supra*.

2.      Federal Review of State Court Decision

The state court found as fact that the Medical Examiner testified at Petitioner's trial that the injuries sustained by the victim were consistent with injuries having been caused by the tree limb found on top of the victim's body, and this evidence refuted Petitioner's claim that there was no "physical evidence" that the tree limb shown next to the victim in a photograph was the murder weapon (*see* Doc. 13, Ex. I at 45).  The state court additionally determined that Petitioner failed to allege any legal reason why the State was required to bring the actual tree limb into court (*id.*). Therefore, the court concluded, Petitioner was not entitled to relief on his ineffective assistance of counsel claims (*id.*).

The trial transcript supports the state court's finding that the State presented evidence that the tree limb was the murder weapon.  The jury heard testimony that the victim's dead body was discovered sitting on the ground on a mattress pad, leaning back against a beach chair, with a tree limb across his head (Doc. 13, Ex. B at 23, 71–72, 75).  The jury also heard testimony from Medical Examiner Cumberland, who stated that he conducted an autopsy on the victim's body and observed the following injuries:  a scrape or abrasion across the right side of the victim's forehead, scrapes and abrasions across his forehead and face, a bruise across the left side of his neck, fractures of bones in the front and top of the his skull, fractures of bones in his face, bleeding on the brain, tearing and bruising of brain tissue, separation of two vertebra at the back of his neck, and a separation of the bone that connects the voice box and the base of the tongue (*id.* at 79–80).  The Medical Examiner also testified that in his opinion, the victim's death was caused by blunt force injuries to the victim's head and neck, and that the injuries were consistent with having been caused

---

issue in the state court and under state law would be procedurally barred from doing so, federal courts should apply the state procedural default law and hold the claim to be barred); Grubbs v. Singletary, 120 F.3d 1174, 1177–78 (11th Cir. 1997) (same); Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.").

by the tree limb shown laying across the victim's body in the photograph (*id.* at 80–81, 89–90). Therefore, there was no basis for defense counsel to argue that there was no evidence that the tree limb shown next to the victim in the photograph was the murder weapon. Furthermore, Petitioner has failed to show a reasonable probability that the jury would have had reasonable doubt about his guilt if defense counsel had argued that the testimony and photograph did not constitute "physical" evidence that the tree limb was the murder weapon. The jury heard testimony from Investigator Nesmith that Petitioner told him that he hit the victim in the head area with a broken beer bottle and then a stick (*id.* at 50, 58–59). Additionally, the jury heard Petitioner's tape-recorded confession to Investigator Nesmith that he killed the victim by hitting him in the head with a stick, because the victim had previously robbed him, and he wanted his money back (*see* Doc. 13, Ex. C). In light of this evidence, Petitioner has failed to show a reasonable probability that the jury would have had reasonable doubt about his guilt if defense counsel had argued that there was no "physical" evidence that the tree limb shown in the photograph was the murder weapon. Therefore, the state court's denial of his ineffective assistance of counsel claims was not unreasonable.

      F.    <u>Ground eight: Failing to provide sufficient grounds for a judgment of acquittal</u>.

      Petitioner next claims that defense counsel was ineffective for making a "boilerplate" argument of insufficiency of the evidence in support of his motion for judgment of acquittal, instead of arguing the following specific grounds: (1) the State did not prove that the Petitioner was the person who caused the death of the decedent, (2) the State did not prove that the Petitioner was at the crime scene or that he had ever been to the crime scene, (3) the State collected over 37 pieces of evidence and not one piece of the evidence linked Petitioner to the crime or the crime scene, (4) the State did not produce a murder weapon at trial, and (5) the confession of the Petitioner was coerced and obtained by unlawful tactics (Doc. 1 at 5E; Doc. 18 at 6). Respondent concedes that Petitioner exhausted this claim in the state courts (*see* Doc. 13 at 5, 14).

      1.    Clearly Established Supreme Court Law

      The clearly established standard for evaluating claims of ineffective assistance of counsel is set forth *supra*.

      2.    Federal Review of State Court Decision

The state court determined that defense counsel's motion for judgment of acquittal adequately explained the basis for the motion to the trial court (Doc. 13, Ex. I at 45). The court additionally determined that the State presented sufficient evidence to establish a prima facie case of second degree murder; therefore, the trial court would not have granted the motion for judgment of acquittal even if defense counsel had argued more specific grounds for the motion (*id.* at 46).

The trial court was required to apply the following standard, enunciated by the Florida Supreme Court, in evaluating defense counsel's motion for judgment of acquittal:

> A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. The courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Where there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the Court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge. The credibility and probative force of conflicting testimony should not be determined on a motion for judgment of acquittal.

Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974) (citations omitted).

Under Florida law in effect at the time of Petitioner's offense conduct, second degree murder was defined as follows:

> The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree and constitutes a felony of the first degree, punishable by imprisonment for a term of years not exceeding life or as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 782.04(2) (2001). Thus, to prove the crime of second degree murder, the State was required to prove the following elements beyond a reasonable doubt: (1) the victim is dead, (2) the death was caused by Petitioner's criminal act, and (3) there was an unlawful killing of the victim by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life. *See* The Florida Bar 2007 Florida Standard Jury Instructions in Criminal Cases, Fifth

Edition, Part Two:  Instruction on Crimes, Chapter 7.4 Murder - Second Degree (2007) (instruction adopted in 1981 and amended in 1997).  An act is "imminently dangerous to another and demonstrating a depraved mind" if it is an act or series of acts that:  (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and (2) is done from ill will, hatred, spite or an evil intent, and (3) is of such a nature that the act itself indicates an indifference to human life.  *Id.*; Conyers v. State, 569 So. 2d 1360, 1361 (Fla. 1st DCA 1990) (citation omitted).

Florida courts have further defined the intent element of second degree murder:

 "Depraved mind" within the second degree murder statute has been variously defined as importing malice in the sense of ill will, hatred, or evil intent, and as an inherent deficiency of moral sense and rectitude.  Ramsey v. State, 114 Fla. 766, 154 So. 2d 855.  It has also been stated that malice is not limited in its meaning to hatred, ill will and malevolence, but "denotes a wicked and corrupt disregard of the lives and safety of others . . . a failure to appreciate social duty."  40 Am. Jur. 2d, Homicide, Section 50.

Hines v. State, 227 So. 2d 334, 335–36 (Fla. 1st DCA 1969).  Additionally, the Florida courts have recognized that within the category of second degree murder there exist varying gradations of cases because some acts are simply more depraved than others.  *Compare* Hines v. State, 227 So. 2d 334 (Fla. 1st DCA 1969) (act of purposely pointing gun at deceased's head from a very short distance and telling deceased that he "had a gun" and that she (the deceased) "should go out . . . and act like a squirrel and if he killed her . . . it wouldn't be no accident," certainly implied malice sufficient to support conviction for second degree murder even if defendant did not intend that the gun would fire), *and* Grissom v. State, 237 So. 2d 57 (Fla. 3d DCA 1970) (evidence was sufficient to support conviction for second degree murder of student where defendant, a junior high school student, was disciplined by a teacher for a rule violation; upon being disciplined, the defendant threatened to return and kill the teacher; a short time later he did return armed with a handgun and fired two shots at the teacher, wounding but not killing him; and while fleeing the building after shooting the teacher, he fired one shot up a stairway in the school building that struck and killed a student standing on the stairs), *with* Manuel v. State, 344 So. 2d 1317 (Fla. 3d DCA 1977) (defendant's act of pointing gun in a direction where one would think a shot could not result in harm to any person is conduct that falls far short of malice required to support conviction for second degree murder).

Viewed in a light most favorable to the State, the evidence presented by the State, described in the analysis of Grounds Six and Seven of the petition, *supra*, is sufficient to permit a rational juror to conclude beyond a reasonable doubt that the victim was unlawfully killed by an act that:  (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and (2) is done from ill will, hatred, spite or an evil intent, and (3) is of such a nature that the act itself indicates an indifference to human life.  Petitioner's confession to law enforcement that he hit the victim with a stick because the victim previously robbed him, together with the Medical Examiner's testimony regarding the extent of the victim's injuries, was sufficient to indicate "a wicked and corrupt disregard of the lives and safety of others."  *See* Hines, 227 So. 2d 334; Grissom, 237 So. 2d 57.  Since a rational trier of fact could have found guilt beyond a reasonable doubt, there was no legal basis for the trial court to grant a judgment of acquittal even if defense counsel had argued more specific grounds than simply "insufficiency of the evidence" in his motion (*see* Doc. 13, Ex. B at 91).  Therefore, Petitioner has failed to demonstrate a reasonable probability that the trial court would have granted the motion if counsel had argued more specific grounds.  Accordingly, the state court's denial of Petitioner's claim was not unreasonable.

G.   Ground nine:  Failing to argue for a downward departure sentence.

Petitioner's final ground for relief includes the following two sub-claims:  (1) defense counsel was ineffective for failing to argue to the jury that Petitioner should be found guilty of a lesser included offense and that Petitioner was voluntarily intoxicated at the time of the crime, and (2) defense counsel was ineffective for failing to argue for a downward departure at sentencing based upon Dr. Larson's testimony at trial regarding Petitioner's mental state and intelligence level (Doc. 1 at 5F).  Respondent concedes that Petitioner exhausted this claim in the state courts (Doc. 13 at 5, 15).

1.   Clearly Established Supreme Court Law

The clearly established standard for evaluating claims of ineffective assistance of counsel is set forth *supra*.

2.   Federal Review of State Court Decision

Regarding Petitioner's claim that defense counsel should have argued to the jury that Petitioner should be found guilty of a lesser included offense that that he was voluntarily intoxicated

at the time of the crime, the state court found as fact that the entire defense presented during trial was that Petitioner did not commit the offense and that his confession to law enforcement was most likely false based upon Petitioner's homeless status, mental problems, intelligence level, and alcohol dependence (*see* Doc. 13, Ex. I at 42).  Indeed, the trial transcript confirms that this was the theory argued by defense counsel during his closing statement (Doc. 13, Ex. B at 133–50).  As the state court determined, it would have been contradictory for counsel to argue for a lesser included offense when Petitioner's entire defense was that he did not commit any crime at all (*see* Doc. 13, Ex. I at 42).  Therefore, it was reasonable for counsel to forego an argument that Petitioner should be convicted of a lesser included offense.  Additionally, the trial transcript shows that although defense counsel did not argue to the jury that they should convict him of a lesser included offense, the jury was instructed on the lesser included offense of manslaughter; therefore, they were aware that they had the option of convicting Petitioner of an offense less than second degree murder (Doc. 13, Ex. B at 161–62).  Therefore, Petitioner failed to show a reasonable probability that Petitioner would have been convicted of a lesser included offense if defense counsel had argued for such during closing statements.  Finally, as discussed in Ground Two *supra*, defense counsel's failure to argue a defense of voluntary intoxication or insanity was not unreasonable.  Therefore, Petitioner is not entitled to relief on his first sub-claim.

Regarding Petitioner's claim of ineffective assistance of counsel at sentencing, the state court found as fact that defense counsel stated at sentencing that he was "not asking for departure necessarily," but counsel did ask the court to consider imposing a term of incarceration which would allow Petitioner to "be released from prison and lead a normal life" (Doc. 13, Ex. I at 46).  The state court determined that Petitioner failed to demonstrate how counsel's failure to specifically request a downward departure sentence was ineffective (*id.*).

Under Florida law, in light of Petitioner's total sentence points of 370.4, the lowest permissible sentence under Florida law was 256.8 months (nearly 21.4 years) of incarceration, and the statutory maximum sentence was life imprisonment (*see* Doc. 13, Ex. A at 27, 32; Ex. I at 48).  *See* Fla. Stat. §§ 921.0024(2), 782.04, 775.087.  A downward departure from the lowest permissible sentence is prohibited under Florida law unless there are mitigating circumstances that reasonably justify the downward departure.  *See* Fla. Stat. § 921.0026(1).  Mitigating circumstances include

substantial impairment of the defendant's capacity to appreciate the criminal nature of his conduct or to conform his conduct to the law, the defendant's need for specialized treatment of a mental disorder that is unrelated to substance abuse or addiction and the defendant's amenability to treatment, and the defendant's cooperation with the State to resolve the current offense. *Id.*, § 921.0026(2).

The transcript of the sentencing hearing shows that defense counsel presented the testimony of Dr. Larson, a psychologist who evaluated Petitioner, in support of his request that the court impose a sentence of less than life imprisonment (*see* Doc. 13, Ex. A at 20–29). Dr. Larson testified that Petitioner was mildly retarded and was "almost a classic alcoholic" (*id.* at 22–23). He also diagnosed Petitioner as suffering from depression with some psychotic features (*id.* at 23). Dr. Larson testified that Petitioner had an ability to connect with people and form some relationships (*id.* at 25). He further testified that although Petitioner was not likely to benefit from further academic training, he was capable of being educated in vocational training (*id.* at 26–27). Following Dr. Larson's testimony, defense counsel argued the following:

> Your Honor, you have before you an adult male who as the doctor just described has lived his life since he was an adult on his own. He's lived a good deal of that on the streets. He's been an alcoholic. He has very little training or skills or capability thereof. He's — before this happened he was living on the streets with a girlfriend.
>
> I've covered this case with him a long time and he's always denied doing it to me but he's confessed doing it to the police and that's why we're here today and that was essentially the only evidence adduced at trial other than he knew the decedent in this case.
>
> There's no, there's no bringing back the decedent in this case and there's no excuse for the action that was done to the decedent in this case. Mr. Cleckler isn't claiming that there is. He just denies doing it and that's why we're here today is that he didn't deny it at one point.
>
> We would ask that you impose a term of imprisonment, that you don't sentence him to life, give him some opportunity at some point in his life to be back on the street.
>
> We're not asking you to put him on probation, we're not seeking departure necessarily, we're just asking the Court to sentence him to a term of imprisonment

and give Mr. Cleckler a chance at some point to try to lead some kind of normal life,
whatever life he's capable of living.

(Doc. 13, Ex. A at 28–29).  Although defense counsel did not specifically request a departure
sentence, he did argue that mitigating circumstances warranted a term of imprisonment below the
maximum.  The court sentenced Petitioner to thirty (30) years, which was well below the maximum
of life imprisonment and only nine (9) years more that the lowest permissible sentence of twenty-one
(21) years.  Petitioner has failed to demonstrate a reasonable probability that the court would have
sentenced him below twenty-one (21) years if defense counsel had specifically requested a
downward departure, instead of arguing the mitigating circumstances as he did.  Therefore, the state
court's denial of Petitioner's claim was not unreasonable.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter McNeil is substituted
for James McDonough as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 22nd day of January 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten
(10) days after being served a copy thereof.  Any different deadline that may appear on the
electronic docket is for the court's internal use only, and does not control.  A copy of objections
shall be served upon the magistrate judge and all other parties.  Failure to object may limit
the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts,
858 F.2d 698, 701 (11th Cir. 1988).**